IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | CR. NO. 2:13cr287-WKW |
| | ) | (WO) |
| TONY JAMES LEFLORE | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

On November 14, 2013, the defendant, Tony James Leflore ("Leflore"), was charged in a multi-count indictment with conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine powder in violation of 21 U.S.C. § 841(a)(1) and § 846.  He was also charged in multiple counts with knowingly and intentionally using a communication facility, a cellular telephone, to cause and facilitate the conspiracy, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.  Finally, he was charged in one count of possession with intent to distribute cocaine powder in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  (Doc. # 19).

On March 18, 2014, Leflore filed a motion to suppress all evidence seized made during the search of his house at 199 Granite Way, in Wetumpka, Alabama on October 17, 2013.  (Doc. # 69).  Leflore asserts that the search at 199 Granite Way was executed prior to the issuance of a search warrant.  He also seeks to suppress evidence seized from his residence and his place of business at 2665 Todd Road, in Montgomery, Alabama because

he contends that the use of electronic surveillance was not necessary.[1]  (Doc. # 69 at 7).

The court held an evidentiary hearing on the motion on April 3, 2014.  Based on the evidence presented to the court and argument of the parties, the court concludes that the motion to suppress is due to be denied.

## II.  FACTS

Prior to June 27, 2013, a large drug trafficking conspiracy was identified as operating in the Montgomery, Alabama tri-county area involving defendants Tony Leflore and Leonardo Fuller.  As a result of the investigation, on June 27, 2013, Hubert Douglas Walters, Jr. ("Walters"), a Task Force Officer with the United States Drug Enforcement Administration ("DEA"), presented an application and affidavit for an order to intercept wire communications over several target telephones, including Target Telephone # 1, Target Telephone # 2 and Target Telephone # 3 to Senior United States District Judge W. Harold Albritton.  (Doc. # 80, Ex. D) (under seal).  Target Telephone # 1 and Target Telephone # 2 are prepaid cellular telephones supplied by Verizon Wireless and believed to be used by Fuller.  (*Id*.).  Target Telephone # 3 is an AT & T cellular telephone with the subscriber listed as Tammy Fuller, Fuller's wife, but it was believed that the phone was used by Fuller.  (*Id*.)  According to the interception application, defendant Fuller is alleged to have used the target telephones to commit illegal drug transactions that included or involved

---

[1] In his motion, Leflore seeks to suppress "any alleged statements made [him]."  (Doc. # 69 at 1).  However, Leflore presented no evidence about any statements he may have made at the time of the search of his residence or his arrest, and in his briefs, makes no arguments concerning any alleged statements he may have made.

Leflore.

The 81-page affidavit filed in support of the Title III, 18 U.S.C. § 2510-2520 intercept, identified at least 13 individuals by name, alleged to be involved in the drug conspiracy including defendant Leflore. The affidavit recites the nature of the offenses, the need for interception of wire communications, and details in length the investigation up to that point in time. For example, the affidavit sets forth common call analyses between the target telephones, and recounts the current investigation which began in 2005. The affidavit describes in depth the use of confidential informants, controlled purchases of marijuana and cocaine, toll record analyses, use of cooperating individuals, placement of pole cameras and physical surveillance to identify the scope of the conspiracy, the participants of the conspiracy, and the sources of the drugs.

Judge Albritton issued the authorization to intercept wire communications based on Walters' affidavit on June 27, 2013. On July 29, 2013, Judge Albritton approved an extension of the application to intercept wire communications over Target Telephone # 3. (Doc. # 80, Ex. E) (under seal). On August 28, 2013, Judge Albritton approved another extension of the application to intercept wire communications over Target Telephone # 3 and approved the application to intercept wire communications over three additional cellular telephones, Target Telephone # 4, Target Telephone # 5, and Target Telephone # 6. (Doc. # 80, Ex. F) (under seal). Finally, on October 1, 2013, a request to renew the interception of wire communications over Target Telephones # 4, 5, and 6 were approved by Judge

Albritton.  (Doc. # 80, Ex. G) (under seal).

As a result of the intercepted wire communications, coupled with other information discovered during the investigation into Leflore's activities, federal law enforcement officers secured six (6) search warrants from United States Magistrate Judge Wallace Capel to execute on properties owned or used by Leflore and Fuller.  One of the search warrants executed on October 17, 2013, was for 199 Granite Way, Wetumpka, Alabama, which was identified as Leflore's residence.  The handwritten notation on the warrant indicates that it was issued at 10:31 p.m.

There is no dispute that the officers entered Leflore's residence at 10:14 p.m. to conduct the search.

### III. DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. AMEND. IV.[2]  "The Amendment protects persons against unreasonable searches of "their persons [and] houses."  *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).  The Fourth Amendment further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Probable cause to support a search warrant exists when

---

[2] Specifically, the Fourth Amendment provides that "[]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

"there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).  Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution.  *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

### A.  Search Warrant for 199 Granite Way

In his motion to suppress, Leflore argues that the agents conducted a warrantless search of his home because they entered his house prior to the issuance of the search warrant.  The basis for this contention is that the warrant, on its face, indicates that it was issued at 10:31 p.m. on October 17, 2013. It is undisputed that the agents executed the search warrant at 10:14 p.m. on October 17, 2013.  Relying strictly on the warrant, Leflore argues that the agents entered the residence before Judge Capel issued the search warrant. The United States argues that the time noted on the warrant was simply a scrivener's error.

At the evidentiary hearing, Officer Walters testified about the issuance of the search warrant. (Evid. Hr'g Tr. at 73).  At the time the warrant was issued for 199 Granite Way, five other search warrants were also issued.  The six warrants were to be executed simultaneously on October 17, 2013.

Walters was part of the tactical team assigned to search 199 Granite Way.  (*Id*. at 74).  Walters was positioned at the front of the neighborhood to ensure that Leflore did not leave the residence.  (*Id*.)  Walters testified that the search did not commence until he had

spoken by telephone to Special Agent Brian Alfultis ("Alfultis") of the DEA who confirmed that the search warrants had been signed and issued by Judge Capel.

As the affiant on the search warrants, Alfultis presented six warrants to Judge Capel.[3] The first three warrants related to property owned or used by Leflore. Judge Capel issued the first search warrant at 9:21 p.m for property located at 2954 Vinson Road, Montgomery, Alabama. *See In re the matter of the search of 2954 Vinson Road, Montgomery, Alabama*, 2:13mj184-WC (M.D. Ala. Oct. 17, 2013) (sealed). The Vinson Road property was described as a "stash house" used by Leflore. (Evid. Hr'g Tr. at 75). The second warrant was issued at 9:27 p.m. for Leflore's car lot.[4] *See In re the matter of the search of 2665 Todd Road, Montgomery, Alabama*, 2:13mj185-WC (M.D. Ala. Oct. 17, 2013) (sealed). The third warrant was for Leflore's residence at 199 Granite Way. The warrant indicates that it was issued at 10:31 p.m., over an hour after the first two warrants were issued. *See In re the matter of the search of 199 Granite Way, Wetumpka, Alabama*, 2:13mj187-WC (M.D. Ala. Oct. 17, 2013) (sealed).

The next three warrants issued were for property owned or used by defendant Fuller. At 9:35 p.m., Judge Capel issued a warrant for Fuller's mother's house. *See In re the matter of the search of 5665 Fuller Road, Montgomery, Alabama*, 2:13mj182-WC (M.D. Ala. Oct. 17, 2013) (sealed). A search warrant for Fuller's business, the Full Moon Bar and

---

[3] The court can, and does, take judicial notice of its own records.

[4] The court notes that Judge Capel dated this warrant 10-17-23 which is clearly a scrivener's error.

Grill, was issued at 9:40 p.m.  *See In re the matter of the search of 3116 Highway 231, Montgomery, Alabama*, 2:13mj183-WC (M.D. Ala. Oct. 17, 2013) (sealed).  Finally, a search warrant for Fuller's residence was issued at 9:46 p.m.[5]  *See In re the matter of the search of 1313 Saxon Court, Montgomery, Alabama*, 2:13mj186-WC (M.D. Ala. Oct. 17, 2013) (sealed).  Thus, according to the times written on the warrants, the six warrants were issued at 9:21 p.m., 9:27 p.m., 10:31 p.m., 9:35 p.m., 9:40 p.m., and 9:46 p.m.  Walters testified that Alfultis called after Judge Capel issued the six warrants, and the agents entered 199 Granite Way at 10:14 p.m.

> Q: Did you ever get the call you that you were waiting on?
> A: That's correct.
> Q: Who called you?
> A: Special Agent Brian Alfultis.
> Q: Did you ask him specifically whether the search warrant for Mr. Leflore's property, 199 Granite Way, had already been signed?
> A: Yes.
> Q: What was his response?
> A: Yes, it was signed.
>
> \*   \*   \*
>
> Q: Approximately what time did you make entry into Mr. Leflore's residence?
> A: 10:14 p.m.
> Q: Okay.  Can you explain the discrepancy between the search warrant's face page on Exhibit A and when you were telling us you made entry into his house?
> A: Must have been a mistake on the time, I just assume.
> Q: Are you positive that when you went in, you had already been told

---

[5] The face of the search warrant does not reflect the time the warrant was issued.  However, Judge Capel noted the time on the application for the search warrant.  *See* Doc. # 3, *In re the matter of the search of 1313 Saxon Court, Montgomery, Alabama*, 2:13mj186-WC (M.D. Ala. Oct. 17, 2013) (sealed).

>
> affirmatively by Agent Alfultis that the warrant was signed and that it was a no knock warrant?
> A:   I am positive.

(Evid. Hr'g Tr. at 77-78).

The court concludes that a sequential review of the issuance of the warrants demonstrates that the time on the search warrant for 199 Granite Way is simply a mistake; the warrant should reflect that it was issued at 9:31 p.m. Coupled with Walters' testimony that the agents had verbal confirmation prior to 10:14 p.m. that the search warrant for 199 Granite Way had been issued, the court concludes that the time noted as 10:31 p.m. was simply a scrivener's error that does not render the search unconstitutional. *United States v. Snyder*, 471 Fed. Appx. 884, 885 (11th Cir. 2012) (typographical error of wrong street address does not render a warrant invalid); *United States v. White*, 356 F.3d 865, 869 (8th Cir. 2004) (incorrect date on face of search warrant does not render it invalid); *United States v. Villaverde-Leyva*, 2010 WL 5579825, *8 (N.D. Ga. Dec. 9, 2010) (same).

Relying on *United States v. McIrby*, 2012 WL 1677642, *2 (S.D. Ala. May 14, 2012), *aff'd*, 519 Fed. Appx. 685 (11th Cir. 2013), Leflore asserts that the United States has failed to meet its burden of demonstrating that the time on the warrant was erroneous because they did not obtain an affidavit from Judge Capel. Leflore's reliance is misplaced. *McIrby, supra*, does not stand for the proposition that an affidavit from an issuing judge is required to demonstrate a scrivener's error. An affidavit is simply one way to establish an error occurred, but it is not the only way.

> The affidavit of District Judge Jo Celeste Pettway, who signed the warrant, explains that the affidavit was presented prior to her signing the warrant and that the variance in the date was the judge's error. (Doc. # 16, p. 7). The judge's error in dating the warrant does not invalidate the warrant or affect the existence of probable cause. *See U.S. v. Vilaverde-Leyve*, 2010 WL 5579825, *8 (N.D. Ga. Dec. 9, 2010) (stating that the incorrect date on the warrant "was the result of a scrivener's error, which does not invalidate the warrant") (citing *United States v. Waker*, 534 F.3d 167, 171 (2d Cir. 2008) ("[T]his Court has explained that when information within a search warrant permits the establishment of intended-but imperfectly scribed-dates, the document is not rendered deficient."); *United States v. White*, 356 F.3d 865, 869 (8th Cir. 2004) (inconsistency between the date on warrant application form and date on search warrant does not eliminate probable cause); *Velardi v. Walsh*, 40 F.3d 569, 576 (2d Cir. 1994) ("Warrants have been upheld despite 'technical errors,' ... when the possibility of actual error is eliminated by other information, whether it be ... supplemental information from an appended affidavit or knowledge of the executing agent derived from personal surveillance of the location to be searched."); *United States v. Lowe*, No. 08-CR-340, 2009 WL 723344, *1 (E.D. Wis. Mar. 17, 2009) ("[I]t is apparent that the fact that the wrong month was typed into the jurat of the affidavit submitted in support of the warrant application was a mere scrivener's error.")).

*McIrby*, 2012 WL 1677642 at *2.

Walters' testimony, coupled with the sequential timing of all six warrants, convinces the court that the time noted on the face of the warrant of 10:31 p.m. was simply a mistake, and that the agents had a valid search warrant prior to entering the residence at 199 Granite Way to search.[6] Consequently, the court concludes that the defendant's motion to suppress on this basis is due to be denied.

Having concluded that the entry into the residence did not violate the Fourth Amendment, the court now turns to the issue of the necessity of the wiretaps.

---

[6] Leflore does not challenge the warrant on any other grounds.

9

**B.  Necessity of the Wiretaps**

The Fourth Amendment also protects "against the uninvited ear, [and] oral statements, if illegally overheard, and their fruits . . . ." *Alderman v. United States*, 394 U.S. 165, 171 (1969).  Pursuant to 18 U.S.C. § 2518(3), the court may authorize the interception of wire communications upon a finding of probable cause.  "The general rule under the statute is that official eavesdropping and wiretapping are permitted only with probable cause and a warrant."  *Alderman*, 394 U.S. at 175.  *See also United States v. Domme*, 753 F.2d 950, 952 (11th Cir. 1985) ("It is well established that an attempt to monitor telephone conversations must comport with constitutional proscriptions.").  The statute further requires that an application for the interception of wire and electronic communications contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  *See also United States v. Carrazana*, 921 F.2d 1557, 1564-65 (11th Cir. 1991); *United States v. Allen*, 416 Fed. Appx. 21, 26 (11th Cir. 2011).

Leflore complains that the wiretaps were unnecessary in this case because "normal investigative procedures worked quite well enough to accomplish every purpose lawfully open to investigative agents of the government."[7]  (Doc. # 69 at 7).  According to Leflore, agents could have rummaged through his trash, used confidential informants to make

---

[7] Leflore does not challenge the applications as lacking probable cause.

controlled buys, engaged in physical surveillance, utilized pole cameras, used a grand jury or other investigative techniques to obtain information about the organization without resorting to wiretaps. The court disagrees.

During the evidentiary hearing, Walters described the objective of the investigation as an "attempt to identify all members of the drug trafficking organization and their precise roles, including facilitators, financiers, managers/supervisors, money launderers, couriers, transporters, distributors, local heads, and sources of supply." (Evid. Hr'g Tr. at 30). Law enforcement was seeking to determine the scope of the organization's distribution and identify its sources of supply at the highest level with the goal of dismantling of the organization.

In this case, the affidavits for the wiretaps recite a lengthy, complex drug trafficking organization that involves at least 13 individuals. The interception authorization affidavits recount Leflore and Fuller's illegal drug trafficking activities which began as early as 2005. The affidavit sets forth evidence gathered from other investigative methods including the use of undercover agents, cooperating individuals and controlled buys. The affiant describes interviews of subjects or associates, and the possibility of utilizing a grand jury. He reports the difficulties with pen registers and physical surveillance, and the problem with attempting trash searches. Finally, he discusses the limitations of financial investigations and the use of pole cameras.

During the evidentiary hearing, Walters also testified in depth about the investigative

11

techniques utilized prior to applying for the wiretaps. Walters explained why these techniques failed to reach the objectives of the investigation. For example, Walters described trash searches as "too risky" and dangerous.[8] The possibility of being observed by Leflore or his neighbors militated against relying on such searches. Walters also testified that while agents had used confidential informants in the past, at the time they applied for the wiretaps, there were no confidential informers or cooperating individuals who were willing to conduct controlled buys from Leflore. (Evid. Hr'g Tr. at 36, 62). In addition, Agent Walters testified that they were unable to infiltrate the organization at Leflore's level of management. (*Id.* at 36-38, 62).

Walters acknowledged that officers had installed five pole cameras that yielded some results. However, the pole cameras were limited in their usefulness because they were fixed, offered no visibility into buildings and were not functional at night. In addition, four of the pole cameras had been discovered and two had been disabled.[9] Walters also described attempts of physical surveillance on Leflore's residence and car lot but noted that the agents were discovered. (*Id.* at 56). Finally, Walters testified that physical surveillance did not reach the objective of identifying all of the participants in the conspiracy or Leflore's source of the drugs.

In the affidavits in support of the interception application and at the evidentiary

---

[8] The fact that officers were not observed "rummaging" through Leflore's trash in February 2014 is immaterial.

[9] Walters testified that one camera had been cut and sprayed painted while the other camera had been shot down.

hearing, Walters recounted in detail the various investigative methods attempted and the reasons for their limited success. Based on the evidence before it, the court concludes that Walters sufficiently explained why the suggested techniques were not feasible in this investigation.

> 18 U.S.C. § 2518 and relevant case law do not require the government to explore every possible avenue of investigation open to it before pursuing electronic surveillance of wire communications, only those avenues which do not reasonably appear unlikely to succeed or which are not too dangerous.

*Allen*, 416 Fed. Appx. at 26-27.

Leflore argued at the evidentiary hearing that several of these techniques including the use of confidential informants or infiltration of the organization would have been sufficient to achieve the objectives of the investigation, but law enforcement did not attempt these methods because they improperly relied on the wiretaps.

> The statute authorizing wiretaps is not intended "to be routinely employed as the initial step in a criminal investigation," *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 1827, 40 L.Ed.2d 341 (1974), but rather, it is designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques would succeed. *Id*. This does not, however, mean that the statute requires "a comprehensive exhaustion of all possible techniques, but must simply explain retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." *United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir. 1986).

*Id*., at 26. *See also United States v. Perez*, 661 F.3d 568, 581 (11th Cir. 2011); *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984). Law enforcement was not require to exhaust *all* avenues of investigation before requesting wiretaps.

Moreover, the mere fact that the agents had some success with different methods of investigation does not eviscerate the need for wiretaps. "The partial success of alternative investigative measures . . . does not necessarily render electronic surveillance unnecessary." *Perez*, 661 F.3d at 581. In this case, Walters sufficiently explained why the use of confidential informants, cooperating individuals or infiltrating undercover officers would not work in this investigation. He adequately explained why using a grand jury would not meet the objectives of this investigation to dismantle the organization because they did not have witnesses willing to testify. He further detailed the limitations of pole cameras, and he described in detail how physical surveillance jeopardizes the investigation because observant neighbors reported the surveillance to Leflore. In addition, physical surveillance would not "show what was occurring inside the house, the full scope of the conspiracy, or lead to the identification of all co-conspirators." *See United States v. Gray*, 544 Fed. Appx. 870, 881-82 (11th Cir. 2013), *cert. denied*, *Thompson v. United States*, 2014 WL 695095 (Mar. 24, 2014). Finally, Walters recounted the risks and dangers of trash searches in this case.

> Section 2518 was not intended "to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984) (quoting *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978)). The statute "does require the Government to show why alternative measures are inadequate for this particular investigation. *United States v. Perez*, 661 F.3d 568, 581 (11th Cir. 2011) (per curiam) (citation and internal quotation marks omitted). A wiretap may be necessary when needed to determine the scope of the conspiracy and all of its members. *See United*

14

*States v. De La Cruz Suarez*, 601 F.3d 1202, 1214 (11th Cir. 2010).

*Gray*, 544 Fed. Appx. at 881. *See also Alonso*, 740 F.2d at 868 ("the statute does not require an initial exhaustion of all conceivable investigatory techniques."); *United States v. De La Cruz Suarez*, 601 F.3d 1202 (11th Cir. 2010) ("a comprehensive exhaustion of all possible investigative techniques is not necessary before applying for a wiretap."). Based on the facts of this case, the court concludes that the United States adequately demonstrated why alterative investigative techniques were insufficient in this investigation and the wiretaps were necessary in this case.[10] Consequently, the court concludes that Leflore's motion to suppress should also be denied on this basis.

### IV. CONCLUSION

For the reasons as stated, this court concludes that the defendant's constitutional rights were not violated, and it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **May 5, 2014.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that

---

[10] In his motion, Leflore asserts that "[t]he inclusion of deliberately false or misleading statements in an affidavit submitted to support a wiretap or search warrant application constitutes grounds for suppress of evidence seized during the wiretap or search. *Franks v. Delaware*, 438 U.S. 154 (1978)." (Doc. # 69 at 8). However, Leflore does not refer to or identify any false statements. *See Franks*, 438 U.S. at 171. Moreover, "[t]he defendant's attack must be "more than conclusory." *United States v. Gray*, 544 Fed. Appx. 870, 882 (11th Cir. 2013). The court concludes that a *Franks* hearing is not warranted in this matter as Leflore's allegations are conclusory and lacking a factual basis. *See Id.*

15

this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 21st day of April, 2014.

                                              /s/Charles S. Coody
                                          CHARLES S. COODY
                                          UNITED STATES MAGISTRATE JUDGE